IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY : <br> COMMISSION : <br> : <br> v. : <br> : <br> FARMER'S PRIDE, INC. : | CIVIL ACTION <br><br> NO. 12-MC-148 |

SURRICK, J.                                                                                                OCTOBER  31 , 2012

### MEMORANDUM

Presently before the Court is Applicant Equal Employment Opportunity Commission's Application for an Order to Show Cause Why an Administrative Subpoena Should Not Be Enforced.  (ECF No. 1.)  For the following reasons, Applicant's Application will be granted in part and denied in part.

**I.     BACKGROUND**

Respondent Farmer's Pride, Inc. is a poultry processing facility that operates a facility in Fredericksburg, Pennsylvania.  (EEOC Appl. ¶ 4, ECF No. 1; *see also* Resp.'s Pet. to Revoke, Lewis Decl. Attach. 7, EEOC Appl. Ex. A.)  On June 20, 2011, the Equal Employment Opportunity Commission ("EEOC") received an amended charge of discrimination filed by an individual named Christian Ramirez, alleging that Respondent discriminated against him on the basis of sex and retaliated against him in violation of Title VII.  (Lewis Decl. ¶ 4(a); *see also* Charge of Discrimination, Lewis Decl. Attach. 1.)[1]  Ramirez alleges that he was sexually

---

[1] The declarant, Spencer H. Lewis, Jr., is the District Director of the Philadelphia District Office of the EEOC.  He is responsible for the Philadelphia office, including the investigation of charges of employment discrimination.  (Lewis Decl. ¶ 1.)  The Philadelphia Office's files include a charge file designated Charge No. 530-2011-02560C, which is a charge filed against Respondent by Ramirez.  (*Id.* at ¶ 3.)  Lewis personally examined that file.  (*Id.* at ¶ 4.)

harassed by his female supervisor, Adelaida Colon, at Respondent's facility in Fredericksburg. (Charge of Discrimination.)  In addition, Ramirez alleges that Colon "made comments of a sexual nature to me and other workers.  She has also touched me and other workers, both male and female, in a sexual manner by reaching underneath the workers' clothes and grabbing (or attempting to grab) their buttocks, breasts, and genitals.  She has reached under my pants while I was working." (*Id.*)  Ramirez also alleges that two male supervisors, Juan Sosa and Jose Luis, "act[ed] inappropriately towards women workers," and on that basis, believes that he and "similarly situated workers" have been sexually harassed. (*Id.*)  Ramirez claims that he has "been unlawfully retaliated against for complaining about this harassment," and on June 20, 2011, he was forced to resign. (*Id.*)  The EEOC commenced an investigation into the matter.

On August 16, 2011, the EEOC served upon Respondent a written request for information. (Lewis Decl. ¶ 4(b); Req. For Info., Lewis Decl. Attach. 2.)  The August 16 request sought, among other things, "personnel information" for all employees supervised by Colon, Sosa and Luis while employed by Respondent.  The "personnel information" included the employee's name, contact information, job title, department, shift, sex, and whether he or she complained about sexual harassment. (Lewis Decl. ¶ 4(b); Req. For Info. ¶ 17.)  On November 3, 2011, the EEOC sent Respondent a letter following up on its request for information. (Lewis Decl. ¶ 4(c); Nov. 3 Ltr., Lewis Decl. Attach. 3.)  Specifically, the EEOC reiterated its request for the personnel information for all employees supervised by Colon, Sosa and Luis. (*Id.*)  The EEOC also made a supplemental request for "[d]ocuments relating to any and all complaints of sexual harassment, whether made formally or informally, since January 2009." (*Id.*)  By letter of November 10, 2011, Respondent objected to, among other things, the EEOC's request for the

2

personnel information as not relevant, overly broad and unduly burdensome. (Lewis Decl. ¶ 4(d); Nov. 10 Ltr., Lewis Decl. Attach. 4.)[2] Respondent also claimed that neither Colon nor Luis were supervisors on the production line and that neither served as supervisors to any employees. (Nov. 10 Ltr. 2.) With respect to the supplemental request for "[d]ocuments relating to any and all complaints of sexual harassment, whether made formally or informally, since January 2008,"[3] Respondent objected to the request as not relevant, overly broad and unduly burdensome. (*Id.* at 4.) Respondent did provide documentation of an informal complaint from two employees in the deboning department from December 2009 and the action taken by Respondent as a result of the complaint. (*Id.* at 4 & Ex. E.)

On January 24, 2012, the EEOC issued and served upon Respondent Subpoena No. PA-12-12 ("Subpoena"). (EEOC Appl. ¶¶ 5-6; *see also* Lewis Decl. ¶ 4(e); Subpoena, Lewis Decl. Attach. 5; *see also* Lewis Decl. Attach. 6 (proof of service).) The Subpoena requests:

(1) List all employees supervised by Juan Sosa during his tenure at Farmers Pride. Provide each employees name, address, telephone number, job title(s), shift, and the

---

[2] Respondent did comply with several of the EEOC's requests for information. For example, Respondent provided the personnel files of Colon, Sosa and Luis. (*See* Nov. 10 Ltr. 2 & Exs. A, B, C.) Respondent also provided a job description for the hourly lead position, which Respondent claims describes the position of Colon or Luis. (*Id.* at 2 & Ex. D.) Moreover, Respondent notes in its memorandum that it "has provided over 380 pages of material to the EEOC, endured a 3:00 a.m. site visit by a team of EEOC representatives that included trial counsel, and provided on-site access to employees and supervisors that the representatives wished to interview." (Resp.'s Answer 2; *see also* Resp.'s Answer Ex. 2 (exhibit index to Respondent's position statement, to which Respondent attached various exhibits, including Respondent's EEOC policy, Respondent's sexual and other harassment policies, Ramirez's acknowledgment of receipt of policies, Ramirez's personnel records, Ramirez's May 18, 2011 disciplinary action, documentation of sexual harassment training, and the final warning provided to Sosa).)

[3] We note that the November 3 letter by the EEOC requested the documents since January 2009, not 2008.

3

>   dates supervised by Mr. Sosa.
>   (2) All documents relating to any and all complaints of sexual harassment, whether made formally or informally, against or relating to Adelaide Colon, Juan Sosa or Jose Luis. This includes all documents generated pursuant to the investigation of any complaint of sexual harassment.
>   (3) All documents relating to any and all complaints of sexual harassment, whether made formally or informally, since January 2008.

(Subpoena.) On January 31, 2012, Respondent filed a petition to revoke the Subpoena, which the EEOC received on February 1, 2012. (EEOC Appl. ¶ 7; Lewis Decl. ¶ 4(g) & Attach. 7 (Pet. To Revoke).)

On March 6, 2012, the EEOC sent Respondent's counsel a letter, stating that it had received some responsive information from Respondent but needed additional information. Among the additional information it needed was "[a] sortable Excel spreadsheet identifying all employees, from 2008 through the present, in the Deboning Department. Such spreadsheet should indicate the following information for each employee: name, last known address, last known telephone number, Social Security Number, hire date, starting position(s) and department, subsequent positions and department, shift assignment for each position, and termination date (if applicable)." (Mar. 6 Ltr., Resp.'s Answer Ex. 3.) On April 5, 2012, the EEOC denied Respondent's petition to revoke. (EEOC Appl. ¶ 7; Lewis Decl. ¶ 4(g) & Attach. 8.) On April 24, 2012, Respondent provided the EEOC with the names and hire dates of active employees supervised by Sosa. However, Respondent did not provide the names of non-active employees supervised by Sosa while employed with Respondent, the contact information for all employees supervised by Sosa, or all complaints of sexual harassment at Respondent's facility since 2008. (Lewis Decl. ¶ 4(h).) On April 26, 2012, an EEOC attorney discussed with Respondent's counsel the Subpoena and again requested production. (*Id.* at ¶ 4(i).) The EEOC claims that

Respondent has since refused to comply with the remaining requests of the Subpoena, which "has delayed and hampered the EEOC's investigation." (EEOC Appl. ¶¶ 8-9; Lewis Decl. ¶¶ 4(i), 5.)

On May 18, 2012, the EEOC filed an Application for an Order to Show Cause Why an Administrative Subpoena Should Not Be Enforced ("Application"). (EEOC Appl..) The Application sought to enforce the Subpoena. (EEOC Mem. 1, ECF No. 1.) The Subpoena sought the names and contact information of potential witnesses and victims supervised by an alleged employee of Respondent, and documents related to sexual harassment complaints filed at Respondent's Fredericksburg facility since 2008. On June 28, 2012, Respondent filed an Answer to the Application. (Resp.'s Answer, ECF No. 7.) The EEOC filed a Reply to Respondent's Answer on July 10, 2012. (EEOC Reply, ECF No. 10.) A hearing on the Application was held on July 13, 2012. (*See* ECF No. 12.) At the hearing, we heard testimony from Liz Chacko, Esquire, an attorney for Friends of Farmworkers ("FOF") who also represents Ramirez, we admitted exhibits into evidence, and we heard argument from counsel. On July 16, 2012, the EEOC, with the Court's prior approval, filed a letter statement, which attached further documentation concerning the Application. (EEOC Ltr., ECF No. 11.) On July 18, 2012, Respondent filed, with the Court's prior permission, a Surreply to the EEOC's Application. (Resp.'s Surreply, ECF No. 13.) The EEOC seeks an Order directing Respondent to comply fully with the Subpoena and granting the EEOC costs for enforcing the Subpoena. (EEOC Appl.¶ 10.)

II.  **LEGAL STANDARD**[4]

The EEOC is empowered to investigate charges of discrimination to determine whether there is reasonable cause to believe that an employer has engaged in an unlawful employment practice.  *See* 42 U.S.C. § 2000e-9.  In connection with its investigation, the EEOC may issue administrative subpoenas.  *See id.*; 29 U.S.C. § 161(1).  "However, the EEOC's statutory investigative authority is not plenary.  It is entitled to access only evidence 'relevant to the charge under investigation.'"  *Kronos*, 620 F.3d at 296 (quoting 42 U.S.C. § 2000e-8(a)).

To obtain court enforcement of an administrative subpoena, an agency must demonstrate that:  (1) its investigation has a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the agency does not already possess the information requested; (4) the agency has complied with relevant administrative requirements; and (5) the demand is not "'unreasonably broad or burdensome.'"  *Id.* at n.4 (quoting *Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 64 (3d Cir. 2003)).  When a party requests a district court to enforce an administrative subpoena, the court's role is not to determine "whether a charge of discrimination is 'well founded' or 'verifiable.'"  *Univ. of Penn. v. EEOC*, 493 U.S. 182, 190 (1990) (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 72 n.26 (1984)).

III.  **DISCUSSION**

A.  **Relevance**

Relevancy in the context of an EEOC investigation under Title VII is wider-reaching than

---

[4] We have jurisdiction over this matter under 42 U.S.C. § 2000e-5(f)(3), and 29 U.S.C. § 161(2) and 28 U.S.C. §§ 1331 and 1345.  *See EEOC v. Kronos, Inc.*, 620 F.3d 287, 295 (3d Cir. 2010) (noting that district court exercised jurisdiction over matter involving enforcement of administrative subpoena under 29 U.S.C. § 161(2) and 28 U.S.C. §§ 1331 and 1345).

in the context of the Federal Rules of Evidence.  *See EEOC v. Franklin & Marshall Coll.*, 775 F.2d 110, 115 (3d Cir. 1985) (noting that the EEOC is not limited to "that which might be relevant at trial").  The Third Circuit has stated that:

> The relevance requirement is not particularly onerous.  Courts have given broad construction to the term "relevant" and have traditionally allowed the EEOC access to any material that "might cast light on the allegations against the employer." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68-69 (1984); *see also EEOC v. Dillon Cos., Inc.*, 310 F.3d 1271, 1274 (10th Cir. 2002) ("The Supreme Court has explained that the 'relevancy' limitation on the EEOC's investigative authority is 'not especially constraining.'" (quoting *Shell Oil*, 466 U.S. at 68)); *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994) (noting that "Congress intended [the EEOC] to have broad access to information relevant to inquiries it is mandated to conduct"); *Franklin & Marshall Coll.*, 775 F.2d at 116 ("The concept of relevancy is construed broadly when a charge is in the investigatory stage.").  Nonetheless, the EEOC's power of investigation is anchored to the charge of discrimination, and courts must be careful not to construe the charge and relevance requirements so broadly as to confer "unconstrained investigative authority" upon the EEOC.  *Shell Oil*, 466 U.S. at 64-65; *see also EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 653 (7th Cir. 2002).  The relevance requirement "is designed to cabin the EEOC's authority and prevent fishing expeditions."  *United Air Lines*, 287 F.3d at 653 (quotation marks omitted).  The EEOC bears the burden of demonstrating relevance.  *See EEOC v. S. Farm Bureau Cas. Ins. Co.*, 271 F.3d 209, 211 (5th Cir. 2001).

*Kronos*, 620 F.3d at 296-97.

Moreover, once the EEOC begins an investigation, it is not required to ignore facts that support additional claims of discrimination if it uncovers such evidence during the course of a reasonable investigation of the charge.  *See, e.g., Gen. Tel. Co. of the N.W., Inc. v. EEOC*, 446 U.S. 318, 331 (1980) ("Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable."); *EEOC v. Cambridge Tile Mfg. Co.*, 590 F.2d 205, 206 (6th Cir. 1979) (*per curiam*) (enforcing EEOC subpoena seeking information related to sex discrimination in job classification after EEOC uncovered evidence of such discrimination during investigation of allegations of sex and race discrimination in

termination); *EEOC v. Gen. Elec. Co.*, 532 F.2d 359, 364-65 (4th Cir. 1976) ("[T]he original charge is sufficient to support action by the EEOC . . . for any discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge . . . ."). Rather, the EEOC has the power to investigate "a broader picture of discrimination which unfolds in the course of a reasonable investigation of a specific charge." *Cambridge Tile*, 590 F.2d at 206.

Respondent contends that the Subpoena is overly broad since it is not limited to Ramirez, Colon, Sosa, Luis or the breast deboning department. Respondent argues that any request should be limited to the third shift in the breast deboning department and be limited to the time period in which the alleged persons who harassed employees were employed by Respondent. Respondent argues that the EEOC's investigation must be limited to "third shift in the breast deboning department during the period of these individuals' employment," and that the Subpoena request for "all documents relating to formal or informal complaints of sexual harassment at the entire facility dating back to January 2008 should be quashed." (Resp.'s Answer 9-15.)

Respondent's argument fails to recognize that "[t]he EEOC's investigatory power is broader than the four corners of the charge; it encompasses not only the factual allegations contained in the charge, but also any information that is relevant to the charge. Thus, the EEOC need not cabin its investigation to a literal reading of the allegations in the charge." *Kronos*, 620 F.3d at 299; *see also Gen. Elec. Co.*, 532 F.2d at 364 ("The charge is not to be treated as a common-law pleading that strictly cabins the investigation that results therefrom, or the reasonable cause determination that may be rested on that investigation. The charge merely provides the EEOC with a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices; and that investigation may well disclose, as in this

instance, illegal practices other than those listed in the charge and provide a basis for a reasonable cause determination with respect to those practices.")(internal quotation marks omitted).  Ramirez alleges that Colon sexually harassed him, and that Sosa and Luis acted inappropriately toward female workers.  Respondent produced documentation of a complaint from two employees in the deboning department from December 2009 and the action taken by Respondent as a result of the complaint.  Thus, based on Ramirez's charge and the EEOC's investigation, there has been more than an isolated incident of alleged harassment in Respondent's facility.  The EEOC's request for complaints of sexual harassment in the Fredericksburg facility is relevant to the pervasiveness of an alleged hostile work environment and alleged retaliation for complaining about such work environment.  *See Kronos*, 620 F.3d 287 ("[T]he EEOC has the power to investigate 'a broader picture of discrimination which unfolds in the course of a reasonable investigation of a specific charge.'"); *see also EEOC v. UPMC*, No. 11-2869, 2012 WL 1010856, at *4 (3d Cir. Mar. 27, 2012) (holding that "[u]nder *Kronos*, the EEOC is entitled to any material that *might* cast light on the charge") (emphasis in original).

　　　　Moreover, complaints of sexual harassment from employees in the Fredericksburg facility, even if outside the deboning department, are clearly relevant to whether Respondent permitted a hostile work environment in its facility.  These complaints, and the frequency of them, are relevant to whether Respondent's sexual harassment policies and procedures, and the actions taken by Respondent in response to its employees' sexual harassment complaints, were adequate.  *See Kronos*, 620 F.3d at 298 (noting that the EEOC is entitled to information that "may provide a useful context" for evaluating employment practices under investigation); *EEOC v. Univ. of Pittsburgh*, 643 F.2d 983, 985 (3d Cir. 1981) (rejecting argument that because the

EEOC was investigating solely the employment practices of the School of Nursing, the faculty information from other schools was irrelevant, since the information could provide a useful context for evaluating the practices under investigation).[5]

Respondent argues that "any class [of Respondent's employees allegedly harassed by Colon, Sosa or Luis] must be limited in time to the period in which the alleged harassers were employed." (Resp.'s Answer 10.) However, the EEOC investigation revealed that there was a sexual harassment complaint from two employees in the deboning department in December 2009. In July 2010, there was a sexual harassment complaint from a female employee involving Sosa. Ramirez filed his complaint of sexual harassment in 2011. Sexual harassment complaints from January 2008 to present certainly provide context in determining whether Respondent's response to sexual harassment complaints by its employees was adequate. *See Kronos*, 620 F.3d at 299 ("Evidence related to the employment practice under investigation prior to and after [the] charge provides valuable context that may assist the EEOC in determining whether discrimination occurred."). Thus, a request for relevant documents pertaining to these claims, and how Respondent responded to these claims, from the beginning of 2008 to present is not

---

[5] The EEOC and Respondent debate whether the Fredericksburg facility is an "open" plant. Respondent contends that its deboning department is separate and apart from its other departments in its Fredericksburg facility. (*See* Resp.'s Surreply 2 n.1.) The EEOC submits that the facility is "open," in that departments are not separated by walls and there are common areas where employees from different departments may interact. It cites the case *Lugo v. Farmer's Pride Inc.*, 802 F. Supp. 2d 598, 610-11 (E.D. Pa. 2011) ("Plaintiffs spend time walking to the lockers to retrieve and stow items. Prior to December 2007, Plaintiffs had to walk to a supply room to obtain a clean smock on a daily basis and often had to wait in line. The parties dispute whether Defendant required Plaintiffs to wait in line to clean themselves and PPE such as arm guards, cut-resistant gloves, and earplugs, and where Plaintiffs stored the PPE.") (internal citations omitted). We need not resolve the issue of whether Respondent's facility is open, since we are satisfied that the documents related to sexual harassment complaints within the entire facility are relevant to the EEOC's investigation into Ramirez's complaint.

unreasonable, and not overly broad.

Respondent cites *EEOC v. Burlington Northern Santa Fe R.R.*, 669 F.3d 1154 (10th Cir. 2012), in support of its argument that information concerning sexual harassment complaints in the general Fredericksburg facility is not relevant to Ramirez's charge. *Burlington* is easily distinguished. *Burlington* involved disability discrimination based on failure to hire. The Tenth Circuit affirmed the district court's order sustaining the employer's refusal to comply with the subpoena, which requested "electronic data about or effecting [sic] current and/or former employees . . . throughout the United States." *Id.* at 1155-56 (alteration in original). The court held that the request was not relevant because "[n]owhere in the document [wa]s there any reference to any other charge — by way of reference to any other charging party, an additional charge number, or anything else — that might indicate that an additional charge is at issue." *Id.* at 1157. By contrast, here, Ramirez's charge alleges that two male supervisors, Sosa and Luis, "act[ed] inappropriately towards women workers." Based on this allegation and the allegations in his charge, Ramirez believed that he and "similarly situated workers" had been sexually harassed. Moreover, the court in *Burlington* noted that "[p]erhaps the EEOC would have been entitled to information relating to other positions and offices *in Colorado* [the state where the charges were filed], but that is not the case before us." *Id.* at 1158 (original emphasis). Here, the EEOC is requesting information that, while encompassing departments other than the deboning department, pertains to *the same facility*. *Burlington* does not support Respondent's argument.

The case of *EEOC v. Nestle Prepared Foods*, No. 11-358, 2012 WL 1888130 (E.D. Ky. May 23, 2012), cited by Respondent is also easily distinguished. *Nestle* involved a charge of discrimination based on retaliation, disability and genetic information. *Id.* at *1. The district

court in *Nestle* denied the EEOC's motion for enforcement of a subpoena, holding that the requested information was not relevant to the specific charge at issue. *Id.* at *3. The court explained that:

> [h]ere, the only alleged GINA violation arose from Peel's EEOC charge in which he checked the box for 'genetic information.' The Court is aware of no other charges against Nestle alleging GINA violations, and the EEOC points to no other information it has acquired in the course of its investigation of [the] charge that would suggest that any other violations have occurred.

*Id.* As discussed above, both the charge and the EEOC investigation have identified and uncovered more than one instance of a sexual harassment complaint.

We are satisfied that the EEOC's investigation need not be limited to the breast deboning department. The EEOC's application to enforce the Subpoena for "all documents relating to formal or informal complaints of sexual harassment at the entire facility dating back to January 2008" will be granted.

### B.     Confidentiality Order

"Courts have 'inherent equitable power' to grant orders of confidentiality upon a showing of good cause." *Kronos*, 620 F.3d at 302 (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 785-86 (3d Cir. 1994)). The party seeking confidentiality establishes good cause by showing that "'disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity.'" *Pansy*, 23 F.3d at 786 (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)). "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing." *Id.* (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)).

The burden of justifying confidentiality is at all times on the party seeking the order. *Pearson v. Miller*, 211 F.3d 57, 72 (3d Cir. 2000).

In *Pansy*, the Third Circuit held that in deciding whether a party has established good cause for a confidentiality order, courts should balance public interests against private interests. *Pansy*, 23 F.3d at 787. The Third Circuit recognized several factors that courts may consider as part of this "good cause balancing test":

> 1) whether disclosure will violate any privacy interests;
> 2) whether the information is being sought for a legitimate purpose or an improper purpose;
> 3) whether disclosure of the information will cause a party embarrassment;
> 4) whether confidentiality is being sought over information important to public health and safety;
> 5) whether the sharing of information among litigants will promote fairness and efficiency;
> 6) whether a party benefitting from the order of confidentiality is a public entity or official; and
> 7) whether the case involves issues important to the public.

*Kronos*, 620 F.3d at 302 (quoting *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)). Under the good cause balancing test, there is a strong presumption against entering an order of confidentiality whose scope would prevent disclosure of information that would otherwise be accessible under a relevant freedom of information law. *Pansy*, 23 F.3d at 791. District courts in this Circuit are required to conduct a good cause balancing test before issuing an order of confidentiality. *See id.* at 792.

Respondent requests that in the event that it is compelled to disclose the requested employee contact information, the Court approve a confidentiality order. Specifically, Respondent requests an order prohibiting the EEOC from disclosing to Ramirez, or FOF and its attorneys, "the private contact information, namely addresses and phone numbers of all

employees supervised by Sosa during his tenure at Farmers Pride, as requested by the EEOC in its subpoena." (Resp.'s Surreply 6.) Respondent claims that FOF and its attorneys have "a history of inappropriate conduct towards [Respondent] and its employees" and that FOF will use the employee contact information for "improper purposes." (Resp.'s Answer 15.) Respondent explains, specifically, that some of its employees have unlisted phone numbers. (*Id.* at 16.) It claims that "past disclosure of similar information has resulted in bullying, telephone solicitation, and an attorney hounding an employee at his house regarding court documents." (*Id.*) Respondent asserts that FOF and its attorneys "will likely seek access to the information for improper purposes — namely, to continue their improper and aggressive tactics." (*Id.*)

The EEOC contends that a confidentiality order is not necessary in this matter since statutory, regulatory and internal administrative protections are sufficient to protect the privacy interests of Respondent's employees. (*Id.* at 15-16.) Moreover, the EEOC contends that Respondent has not demonstrated good cause. (EEOC Reply 13-20.)

The EEOC and Respondent center their dispute on, and have provided evidence concerning, the first and second factors.[6]

---

[6] The parties agree that the following factors are neutral or do not apply in this case: factor three, whether disclosure of the information will cause a party embarrassment (*see* Resp.'s Answer 17; EEOC Reply 19 n.5); and factor four, whether confidentiality is being sought over information important to public health and safety (*see* Resp.'s Answer 16; EEOC Reply 19 n.5). With respect to factor five, whether the sharing of information among litigants will promote fairness and efficiency, we have seen no evidence on this issue and believe this factor to have little, if any, role in the analysis. With respect to factor six, whether a party benefitting from the order of confidentiality is a public entity or official, Respondent is not a public entity or official, so this factor weighs slightly against entry of a confidentiality order. With respect to factor seven, whether the case involves issues important to the public, while we acknowledge that sexual harassment claims should not be taken lightly, we find that at this stage of the investigation, this case does not involve unique issues that are important to the public. Therefore, the seventh factor is neutral.

*1.     Whether Information Is Sought For Legitimate/Improper Purpose*

In its papers and at the hearing on the EEOC's Application, Respondent claimed that "though [FOF] presumably seeks the information for a proper purpose, [FOF] and its network of attorneys will likely seek access to the information for improper purposes — namely, to continue their improper and aggressive tactics." (Resp.'s Answer 16.)  Respondent carries the burden of establishing good cause by showing that "disclosure will work a clearly defined and serious injury to the party seeking closure.  The injury must be shown with specificity." *Pansy*, 23 F.3d at 786 (internal quotation marks omitted).  Respondent has submitted a declaration, deposition transcripts and the trial transcript from the case of *Lugo v. Farmer's Pride, Inc.*, No. 07-749 (E.D. Pa. filed Feb. 23, 2007), a case against *Farmer's Pride* alleging wage and hour litigation. (*See* July 13, 2012 Hr'g ("Hr'g") Exs. Resp.-1-4.)  Respondent claims that this evidence clearly demonstrates the "improper use of employee contact information [by FOF] for union organizing, improper solicitation, and certain bullying tactics related to the wage and hour litigation." (Resp.'s Surreply 7.)

We understand Respondent's concern that the personal contact information of its employees could be used for improper purposes.  The declaration of Wanda De Jesus establishes that a general meeting was held on April 21, 2007 at the Hispanic Center in Reading, Pennsylvania.  (Hr'g Ex. Resp.-1 at ¶ 3.)  The meeting was attended by union representatives and some employees of Respondent.  At the meeting, the union representatives "passed out cards asking the workers to sign them for union representation" and distributed "some form of paperwork and asked workers to take the paperwork back to the plant." (*Id.* at ¶ 7.)  The deposition transcript of Torres-Maldonado demonstrates that Shamaine Daniels, an assistant to

Ramirez's attorney Liz Chacko, and Philip Downey, the attorney who represented the plaintiffs in the *Lugo* action, attended this meeting. (Hr'g Ex. Resp.-2 at 324-28.) The deposition transcript of Cedeno-Gibson shows that this individual was called at home to be invited to the meeting, and that among the attendees of the meeting were some of Respondent's employees, Downey and union representatives. (Hr'g Ex. Resp.-3 at 287-91, 297.) Ramirez's attorney, Chacko, or at a minimum, FOF, clearly had ties to the *Lugo* matter. Moreover, Respondent has submitted evidence that union representatives who attended meetings related to the *Lugo* matter contacted, and even solicited, workers. This evidence supports our concern that, should the EEOC disclose the employee personnel information to Ramirez or FOF, the private contact information of Respondent's employees may well be used for solicitation purposes, resulting in a clearly defined injury — a violation of the privacy interests of their employees.

    Our concerns were heightened, rather than allayed, at the hearing on the EEOC's application. At the hearing, we asked the EEOC why it would not agree to enter into a confidentiality order since doing so would protect the privacy interests of the employees while still allowing EEOC access to the information it claimed it needed in order to conduct its investigation. The EEOC simply responded that a confidentiality order was not necessary since it was bound by its obligations by federal law, and specifically, FOIA. This response did not lessen our concerns that the personal contact information of Respondents' employees — most, if not all, of whom have nothing to do with Ramirez's sexual harassment claim — could be used improperly.

    In *EEOC v. Bashas', Inc.*, No. 09-0209, 2011 WL 6098788 (D. Ariz. Dec. 8, 2011), the district court held that "the unique circumstances of this particular EEOC investigation mandate

16

entry of a confidentiality order to safeguard Bashas' interest in maintaining the confidentiality of its employee data." *Id.* at *2. There, the respondent claimed that the EEOC was pursuing its investigation improperly, "to bolster the struggling *Parra* litigation," which was a related private class action. *Id.* at *1. The court entered a confidentiality order to "safeguard" the respondent's interest in maintaining the confidentiality of its employee data since the record left the court with "grave concerns" "regarding the close ties between the EEOC and counsel for the plaintiffs in *Para*," and to comply with the EEOC's subpoena, the respondent would have to produce data to which this court previously held that the *Parra* plaintiffs were not entitled. *Id.* While the facts in *Bashas* are not identical to the facts here, we have similar concerns related to the ties between Ramirez's counsel in this matter, the FOF, and the *Lugo* action. Similarly, in *EEOC v. Kronos*, No. 09-0079, 2011 WL 1085677 (W.D. Pa. Mar. 21, 2011), *rev'd on other grounds*, 694 F.3d 351 (3d Cir. 2012)[7], the court found that good cause existed to necessitate the entry of a confidentiality order to protect against disclosure of Kronos' trade secrets or confidential information and the personal information of persons taking the personality assessment instrument

---

[7] On appeal, the Third Circuit affirmed the district court's opinion, and held that the court "did not abuse its discretion in entering a confidentiality order." *EEOC v. Kronos Inc*., 694 F.3d 351, 368 (3d Cir. 2012). The court only took issue with the scope of the district court's confidentiality order. *Id.* at 368-369. The order contained a broad definition of "Confidential Information." *Id.* at 368. The court reasoned that such a broad definition would encompass documents in which the parties had no privacy interest, and would allow Kronos to unilaterally assert an automatic exemption under the Freedom of Information Act ("FOIA") for any disclosed information. *Id.* at 368-69. Under FOIA, EEOC officials are required to analyze documents to determine if they are subject to disclosure. *Id.* Accordingly, the court concluded that the confidentiality order ran afoul of FOIA by prohibiting EEOC officials from performing the requisite FOIA analysis. *Id*. at 369.
   We cite the district court case for the proposition that a confidentiality order is proper to protect private individual's contact information. The Third Circuit's reversal has no bearing on this proposition.

that was administered to job applicants. The district court justified the entry of a confidentiality order, in part, on grounds that "disclosure of the information sought by the EEOC would certainly violate privacy interests of potentially millions of job applicants," and "would potentially cause the job applicants embarrassment." *Kronos*, 2011 WL 1085677, at *15. Respondent here has demonstrated a significant potential for the violation of the privacy interests of its employees who are the subject of the request in the Subpoena. A confidentiality order eliminates the problem and in no way interferes with the EEOC investigation. This factor weighs in favor of entering a confidentiality order protecting against disclosure of the personal contact information of Respondent's employees.

          2.      *Whether Disclosure Will Violate Privacy Interests*

      Title VII prohibits any employee of the EEOC from disclosing any information obtained during an EEOC investigation to the public. *See* 42 U.S.C. § 2000e-5(b) (stating that charges "shall not be made public by the Commission" and providing for fines or imprisonment for violating this rule of confidentiality); 42 U.S.C. § 2000e-8(e) (applying specifically to information obtained during an investigation). The EEOC's own regulations and compliance manual prohibit disclosure of such information to the public. *See* 29 C.F.R. § 1601.22 (providing that an EEOC charge and "any information obtained during the investigation of" a charge of discrimination under Title VII "shall" not "be made matters of public information" by the EEOC "prior to the institution of any proceeding under . . . Title VII involving such charge or information"); *see also* EEOC Compliance Manual § 83.1, 2006 WL 4673280 (E.E.O.C.C.M. Aug. 2009). Moreover, the Privacy Act of 1974 also protects against disclosure of the EEOC charge files to the public. *See* 5 U.S.C. § 552a(b) (generally prohibiting disclosure of "any record

which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains," followed by enumerated exceptions).

However, there is "an exception to this general prohibition by authorizing disclosure of investigative files on an employer to the charging parties, the respondents, their attorneys, and witnesses when disclosures deemed necessary for securing appropriate relief." *Univ. of Pittsburgh*, 643 F.2d at 986-87; *see also EEOC v. Assoc. Dry Goods*, 449 U.S. 590, 598 (1981) (concluding that Congress did not include the charging parties within the "public," as defined in Title VII statute, to whom disclosure of confidential information is illegal under the provisions of Title VII). Respondent argues that this carve-out will cause the private contact information of its employees to be disseminated, and will thus violate their privacy interests. We agree.

The August 16 request seeks Respondent's employees' "personnel information," which includes the employee's personal telephone number and address. Some of these telephone numbers are unlisted. As discussed above, we have concerns that this personal information is being sought, and may be disclosed, for improper purposes. Moreover, at the hearing on the EEOC's Application, the EEOC failed to assure us that the privacy interests of the employees would be adequately protected. The EEOC would not agree to enter into a confidentiality order protecting against the disclosure of the employee's private personal information. It argued that statutes, such as FOIA, and regulations would adequately protect employees' interests. In light of the ties between Ramirez's attorney, FOF, and the *Lugo* action, we are not persuaded that the statutes, rules and regulations that the EEOC is bound by are sufficient to ensure the confidentiality of the personnel information requested. Moreover, a confidentiality Order will

have no effect whatsoever on the EEOC investigation. This factor weighs in favor of entering a confidentiality order as well.

### C. Costs

The EEOC's request for the costs of litigating enforcement of the Subpoena will be denied. Respondent's objections were made in good faith and have some support in the case law. The context of the EEOC's Application and the procedural history of this matter and the *Lugo* matter are unusual. It would be unjust to put the cost of the enforcement proceeding on Respondent. *See EEOC v. Von Maur, Inc.*, No. 07-19, 2007 WL 3503435, at *5 (S.D. Iowa Oct. 22, 2007). Moreover, Respondent has made significant efforts to comply with the EEOC's investigation. *See EEOC v. Cnty. of San Benito*, 818 F. Supp. 289, 292 (N.D. Cal. 1993).

## IV. CONCLUSION

For the foregoing reasons, Applicant's Application is granted in part and denied in part.

An appropriate Order follows.

BY THE COURT:

_____
**R. BARCLAY SURRICK, J.**